# HOBART *v.* THE SUPERVISORS OF BUTTE COUNTY.

OUR system is not a pure Democracy, but a representative, Republican Government; one of whose departments—the Legislative—has the exclusive faculty of enacting laws.   But the Legislative department, representing the mass of political powers, is no further controlled as to its powers, or the mode of their exercise, than by the restrictions of the Constitution.   Such restrictions must be shown before the action of the Legislature, as to fact or mode, can be held invalid.

The Legislature, having this general power of enacting laws, may enact them in its own form, where not restrained, and give to them such effect, to be worked in such way and by such means as it chooses to prescribe.   It may provide that

a law shall go into effect at one time or another; absolutely or on condition; upon certain terms or in a certain event, or without regard to future events.

The Legislature may make a *local law* depend for effect upon the will of all the voters of a locality, or a majority, or upon the assent of a few, as in the case of removals of capitols, court houses, etc., upon donations or other advantages being received.

The Act of 1860, (statutes 1860, 90) authorizing Butte county to purchase and hold $200,000 of *the first mortgage bonds of* the California Northern Railroad Company, and to issue county bonds in payment of the same, as amended by the Act of 1860, (Statutes 1860, 133) the fourth section of which authorizes the Supervisors to issue the bonds if, at the election by the people, to whom the matter is submitted, the issuance of the bonds be authorized, is a law, and not a mere transfer to the people of the county of the power to pass laws. The fact that the issuance of the bonds depends upon the will of the people is a mere condition affixed by law; and as the Legislature, in the absence of Constitutional restrictions, have the right to exercise an unqualified power, they may add—as is done here by this condition—a qualification to the power.

n this case, it was unnecessary to publish the notice of the election for twenty days after the passage of the amendatory act. The substantial matter was provided for in the original act, and the details provided for in the amendatory act did not affect the substantial features of the original act.

Nor was it necessary, under the act, that the polls should be opened in every precinct in the county.

The fact that the amendatory act changes in substance the proposition as presented by the original act is immaterial, because not touching the power of the Legislature, or the authority of the public agents under it—the change in the proposition being, that by the original act the people were to vote as to whether the county should exchange county bonds to the amount of $200,000 for that amount of railroad bonds; while by the amendatory act the Board of Supervisors were required, if the first proposition was accepted by the popular vote, to remit two years' interest on the railroad bonds.

APPEAL from the Fifteenth District.

Bill against the Supervisors of Butte county, the California Northern Railroad Company, a corporation under the laws of this State, and the Treasurer of the county, to restrain the Supervisors from issuing county bonds to the railroad company, in accordance with the statutes named in the opinion of the Court.

The complaint, among other things, contains averments that plaintiff is a tax-payer of Butte county, and that if the Supervisors are permitted to issue the bonds, they will be a lien and incumbrance on his property for the next twenty years, etc. Defendants demurred generally.

In accordance with the original act, the Supervisors, on the seventeenth of March, 1860, issued a proclamation for an election, under the act, upon the seventh day of April following. The proclamation provided for an election in each precinct of the county, naming the Inspectors and Judges, and was published, together with the act itself, in the two newspapers of the county, on Saturday, March 17th, 1860, and on each successive Saturday, up to and including April 7th, 1860, the day of election. The amendatory act was published in the same papers March 31st and April 7th, 1860. The election was fairly conducted, as in case of county officers—though in many precincts no polls were opened. The vote was in favor of issuing the bonds, and the Supervisors were taking the proper steps to issue them when this bill was filed.

The Court below sustained the demurrer, and defendants declining to answer, gave final judgment, perpetually enjoining the issuance of the bonds. Defendants appeal.

*F. M. Smith, District Attorney*, for Appellants.

I. The Act of 1860 is a law, although it submits the question of issuing the bonds to a vote of the people. (*Blanding* v. *Burr*, 13 Cal. 346 ; 21 Penn. 202 ; 21 Ohio, 88 ; 24 Barb. 242 ; *Clark* v. *City of Rochester*, 14 Id.)

II. It was not necessary that the notice of election should be published twenty days after the amendatory act. The first section of the original act is the only section in either act providing for the manner of calling and holding the election ; and this section was not amended. The provisions of this section were complied with.

III. That polls were not opened in every precinct was not the fault of the Supervisors ; besides, the act does not require all the electors to vote ; and still further, polls were opened at each town in the county, and each elector could have voted in the town of his residence.

*Williams, Patterson & Stow*, for Respondent.

I. Although section one of the original act was not amended, yet the spirit and intention of requiring the proclamation was, to

3

Hobart *v.* The Supervisors of Butte County.

give notice to all the voters and tax-payers of the provisions of the act, that they might vote intelligently; and the Legislature, by passing the amendatory act so late as March 29th, having put it out of the power of the Supervisors to give such notice, the vote and all subsequent proceedings are void.

II.    There were no polls opened at some of the precincts, and the voters residing there had no opportunity to vote.    This vitiates the election.

III.    The two acts are unconstitutional and void, because not complete and operative of themselves, but depending for their entire force and validity upon the vote of the people.    In short, the Legislature delegated the law-making power to the electors of the county.    By section two of the act, as amended, if a majority of the electors voted " No," then no provisions of the act were to become operative, except—1st. To call an election.    2d. To give twenty days' notice thereof.    3d. To prepare ballots.    4th. Offici- ally to declare the result.    The main object of the law, to wit: to issue bonds to aid the railroad—would never go into effect. (*Thorne* v. *Cramer*, 15 Barb. 112; *Bradley* v. *Baxter*, Id. 123; *Barto* v. *Himrod*, 4 Seld. 496.)

IV.    The acts are unconstitutional and void, because authoriz- ing the county to become a trader and dealer in financial securities, which is beyond the purpose for which counties are organized. (Const. art. 11, sec. 4.)

*Robinson, Beatty & Heacock,* also for Respondent.

I.    The question submitted to the voters of Butte county by the acts in controversy, was as to the *quantum or extent of authority* wherewith their Board of Supervisors should be clothed.    They were to decide whether a certain power should or should not be delegated by the Legislature or themselves to the county authori- ties.    Before the act, the Supervisors could not subscribe on behalf of the county for stock in railroads, nor issue bonds for this or any other purpose.    Without this act no such claim could have existed. With this act no such claim could have existed, unless a majority had confirmed it by their vote.    Without the act the power did not

Hobart v. The Supervisors of Butte County

exist. With the act, the power did not exist without the vote. To the popular vote, then, is the government of Butte county indebted, if at all, for the power which it enjoys and exercises on the subject matter of this controversy.

The powers and duties of county governments can be fixed by law only, and law is the expression of Legislative will, conformable to the provisions of the Constitution. (Const. art. 11, sec. 5; art. 4, sec. 1.) The effect of the act here is not to determine that the Supervisors shall issue the bonds, etc., but to leave it to the majority of voters in the county to determine the power and duty of their Supervisors. In short, to prescribe that which the Constitution says shall be prescribed by law.

It is not denied that a law is valid, the execution of which, by its provisions, is made to depend upon a future contingency. But whether an act is or is not to become a law; whether, as in this case, a power is or is not to be conferred, is a point to be determined only by the law-making power. Had the act under consideration have vested the power in the Board to issue the bonds, independent of all other authority, but made its exercise dependent on the popular vote, it would not have been obnoxious to the objections now urged against it. But by the very terms of the act, and in its contemplation, the authority proposed to be conferred upon the Board is derived from the election, and not from the Legislature. It is enacted in section four, page one hundred and thirty-four: "If the election shall authorize the issuance of said bonds, the Board of Supervisors, in that event, are empowered to issue the bonds." The whole power, the whole authority to issue the bonds is derived from the election. When the authority has been thus conferred, the details, the mode and manner of its exercise are alone determined by the Legislature. The Legislature contents itself with the subordinate part of regulating the details of the transaction, while the power to transact is derived directly from the popular vote. (*Barto* v. *Himrod*, 4 Seld. 483; *Thorne* v. *Cramer*, 15 Barb. 112; *Bradley* v. *Baxter*, 15 Id. 112; *Parker* v. *Commonwealth*, 6 Barr, 507; *Rice* v. *Foster*, 4 Harrington, 479.)

Neither do the authorities referred to by the appellants militate

against the positions taken by us, but on the contrary, they recognize the distinction here taken, which constitutes the difference between the case at bar and those referred to, and maintain the principle here contended for.

These authorities show:

That when there is a power granted by an act, the exercise of which depends upon some future event, the act is valid.

That where power is given by an act, but the exercise of the power is permissive and not mandatory to the people to be affected thereby, the same is valid.

When an act is mandatory, and its exercise depends upon the will of those to be bound thereby, the same cannot be said to be a law; and,

When the limitation of the submission to the popular vote is directly upon the grant of power, and not upon its exercise, after the grant had taken effect and vested the power, the act is void.

The principles here announced are precisely decisive of this case. If the majority voted for the subscription, then it is mandatory to the Supervisors to issue the bonds. If the majority voted for the subscription, then the Supervisors had the power conferred; otherwise, not.

There is the same difference between the statute now under consideration and the one interpreted in *Blanding* v. *Burr*, (13 Cal. 346) as there is between this and the statutes in the New York cases. In *Patterson* v. *City of Marysville*, (13 Cal. 181) the questions raised here were not raised, nor were they decided or referred to by the Court.

II.   The notice was insufficient.

III.   By the amendatory act of the twenty-ninth of March, the provisions of said act were materially changed in some very essential particulars.   By the operation of the two acts the voters acted upon one proposition, while another was thereby adopted.

The important difference between the two propositions submitted to vote consists in this: The first act submitted to vote whether the county should exchange the bonds of the county, to the amount of $200,000, for the bonds of the railroad to an equal amount; each

Hobart v. The Supervisors of Butte County.

bearing interest at the same rate. By the last act, it becomes obligatory on the Board of Supervisors, if the first proposition is accepted, to remit two years' interest on the bonds to be given them by the railroad company. The question then was, really, Shall the county give their bonds for the amount of $240,000 for $200,000 worth of bonds of the company? In the nature of things, the notice required by the statute could not have been given.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

The plaintiff below, respondent here, filed a bill to restrain the defendants from carrying out the provisions of an act and amendatory act passed at the last session of the Legislature. (Session Acts of 1860, 90–133.) The titles of these acts are respectively as follow: "An act to authorize the county of Butte to purchase and hold two hundred thousand dollars of the first mortgage bonds of the California Northern Railroad Company, and to issue the bonds of said county for the payment of the same, and for other purposes connected therewith," page 90. "An act amendatory of and supplemental to an act entitled, an act to authorize the county of Butte to purchase and hold two hundred thousand dollars of the first mortgage bonds of the California Northern Railroad Company, and to issue the bonds of said county for the payment of the same, and for other purposes connected therewith," page 133. By the last act the original act is amended in all of its sections, except the first. The first section is in these words: "It shall be the duty of the Board of Supervisors of the county of Butte to call an election, giving twenty days' notice thereof, by publication in all the newspapers published in said county, to be held on or before the first Saturday in April next, for the purpose of submitting to the qualified electors of said county, the proposition for said county to purchase and hold two hundred thousand dollars of the first mortgage bonds of the California Northern Railroad Company, having twenty years to run to maturity, and to issue the bonds of said county in payment for the same, the proceeds thereof to be applied by the California Northern Railroad Company in building or constructing

a railroad, commencing at the town of Oroville, in Butte county, connecting it with tide water by way of Sacramento or otherwise. The Board of Supervisors of said county shall cause to be prepared a sufficient number of ballots for the use of the electors at such election, with the words ' County bonds for the Northern Railroad Company' printed thereon. Every ballot voted at said election shall have the word ' Yes,' or the word ' No' written or printed thereon ; and the said election shall be conducted and the returns thereof made in the same manner as provided for in the cases of the elections of county officers."

The fourth section of the amendatory act is as follows: " This section shall be known as section nine of said act. If the election to be held in pursuance of the act to which this is amendatory and supplementary, shall authorize the issuance of said bonds of said county, the Board of Supervisors of said county, in that event, are authorized and empowered to issue the bonds of said county in accordance with the provisions of said act, to the California Railroad Company, or any other company that may be incorporated to construct a railroad connecting the same points as provided in said act."

The main question made by the record, and pressed by the respondent is, that this act is not a law, for the reason that the matter prescribed is not the will of the Legislature, but a mere transfer to the people of Butte county of powers to legislate. The argument is, that the Constitution vests the Legislature with the law-making power, and that this department cannot delegate its powers to the people of the State, or any portion of them. It is contended that this act, by the fourth section, makes the issuance of the bonds absolutely dependent upon the result of the election ; and that, therefore, the majority of the voters of the county, and not the Legislature, decree their issuance. The general principle is unquestionably true, that our system is not a pure democracy, but a representative republican government ; one of whose departments, the Legislature, has the exclusive faculty of enacting laws. But the legislative department, representing the mass of political powers, is no further controlled as to its powers, or the mode of

Hobart *v.* The Supervisors of Butte County.

their exercise, than by the restrictions of the Constitution.   Such restrictions must be shown before the action of the Legislature, as to fact or mode, can be held invalid.   Accordingly, the Legislature having this general power of enacting laws, may enact them in its own form, where not restrained, and give to them such effect, to be worked out in such way and by such means as it chooses to prescribe.   It may provide that a law shall go into effect at one time or another, absolutely or on condition, upon certain terms or in a certain event, or without regard to future events.   This doctrine was held in the case of *Blanding* v. *Burr*, (13 Cal. 358) where this language was used by Mr. Justice Field : " The Legislature may determine absolutely what may be done, or it may authorize the same thing to be done upon the consent of third parties.   It may command, or it may only permit ; and in the latter case, as in the former, its acts have the efficacy of laws."   And in *Moers* v. *City of Reading*, the Supreme Court of Pennsylvania says : " When individuals or corporators are merely authorized to do a thing, the doing of it necessarily depends on their own will, and we can see no reason why the acceptance of a new power, tendered to a public corporation, may not be made to depend on the will of the people, when it is expressed by themselves, as well as when it is spoken by the mouths of their officers and agents."   And on a similar question, the Supreme Court of Ohio observes, that the true distinction " is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law.   The first cannot be done ; to the latter, no valid objection can be made."   It has been observed that the Act of 1860 is a law expressly providing for an election, to take the sense of the people in regard to this subscription of stock, etc.   All the voters being, in a legal sense, tax payers, and the project being a public work in which they, and indeed the whole county, were interested, it would seem to be proper that they should be consulted before the tax for this purpose was declared, or the acts done by which taxation would be imposed upon them.   If the same law existed in regard to a corporation, no

question would be made ; that is, if the act provided that the sub-scription should be authorized upon the assent of the stockholders. The matter *here* takes effect upon the assent of the people of the county expressed in a particular mode. The Legislature frame the law, and fix its terms and provisions; but they declare that this law shall only take effect in a particular event, that event being the assent of the people interested. It is difficult to see upon what principle the Legislature, having the general powers before attrib-uted to it, may not as well make a *local law* depend for effect upon the will of all the voters of a locality or a majority, as upon the assent of a few ; and laws are passed every day which depend for validity upon the acts of individuals. For example, such acts as the removal of capitols, court houses, etc., upon donations or other advantages being secured. We do not understand the cases cited from New York and Pennsylvania to conflict with this view. *Thorne* v. *Cramer* (24 Barb. 112) involved the constitutionality of the school law of New York, a general act. The act was held to be unconstitutional, because a transfer of legislative powers to the people. The act provided " that the electors shall determine by ballot at the annual election to be held in November next, whether this act shall or shall not become a law." The fourteenth section of the same act provides " in case a majority of all the votes in the State shall be cast against the new school law, this act shall be null and void, and in case a majority of all the votes in the State shall be cast for the new school law, then this act shall become a law and shall take effect," etc. *Bradley* v. *Baxter* (Id. 123) is to the same effect.

The case of *Parker* v. *The Commonwealth* (6 Penn. 507) arose upon an act giving the citizens of certain counties the power to decide by vote whether the sale of vinous and spirituous liquors shall be continued within those counties, and imposing a penalty for the sale of such liquors when a majority of the votes had been against such sale. It was held that the act was unconstitutional. This was delegating to the people the right to pass a penal law.

*Grant* v. *Courter* (24 Barb. 242) is a case where a law was made to depend upon the consent of two-thirds of the tax payers

first obtained.   In noticing the objection that the act was unconstitutional on this ground, the Supreme Court of New York say: "It was a grant of power, taking effect as a law, without reference to the question whether the towns availed themselves of its provisions or otherwise.   It authorized the towns to borrow money, provided the consent of two-thirds of the tax payers, representing two-thirds of the taxable property of the towns, was first obtained; but this condition, or restraint, upon the exercise of the power conferred, was imposed by the Legislature, and was as much the unaided emanation of its will as the conferring of the power itself.   An act granting power to be exercised upon such conditions as the Legislature impose, is no delegation of legislative authority nor is it invalid.   (*Moers* v. *City of Reading*, 21 Penn. 189; *Cincinnati R. R. Co.* v. *Commissioners of Clinton County*, 21 Ohio, 77.)" So in *Clark* v. *The City of Rochester* (14 Barb. 447) it is held that the Legislature may authorize municipal corporations to subscribe to the stock of a railroad company with the assent and approval of a majority of the corporators duly ascertained.   That case is analagous to this in the facts.   By several sections of the act, it was provided " that they should not take effect until they shall have been submitted to the electors of the city of Rochester, qualified to vote for charter officers of said city at a special election, for the purpose of determining whether or not it is expedient for said city to borrow the money mentioned in said sections for the purposes therein specified."   The Court decided the act constitutional.   It is evident that the same objections would apply in quite as strong a degree to such an act as that before us; for the validity of the obligation in the case cited is made to depend upon the vote.

The majority opinion thus states the conclusion: " There is no difference in practical or legal effect between an act conferring .power to borrow money upon the event of the people deciding, in a mode provided by the act, that it is expedient to borrow, and an act vesting the power absolutely, but prohibiting its exercise, unless the people shall decide it is expedient.   In neither case do the people decide, except impliedly and by inference, upon the expediency of the law.

"I perceive no objection, arising out of the Constitution, to making a mere permissive law depend upon a vote of those designed to be benefited by the permission, in favor of the expediency of doing the act permitted. The whole legislative power is exerted, and the whole responsibility in regard to the law exercised by the Legislature in such a case; no part of it is referred to others. In the opinions in *Barto* v. *Himrod*, it is admitted that conditional legislation, where there is no transfer of the legislative power or judgment, is allowable; and Ruggles, J. in his opinion, defines such allowable conditional legislation. He says: 'The event or change of circumstances on which a law may be made to take effect, must be such as in the judgment of the Legislature affects the question of the expediency of the law—an event on which the expediency of the law, in the judgment of the law-makers, depends. On this question of expediency the Legislature must exercise its own judgment, definitively and finally. When a law is made to take effect on the happening of such an event, the Legislature, in effect, declares the law inexpedient if the event should not happen, but expedient if it should happen. They appeal to no other men or man to judge for them in relation to its present or future expediency. They exercise that power themselves, and then perform the duty which the Constitution imposes on them.' In support of the doctrine of this case, see *Johnson* v. *Rich*, 9 Barb. 680; *Morris* v. *The City of Reading*, 9 Harris, 188; *The Cincinnati and Zanesville R. R.* v. *Commissioners, etc.* 1 McCook, 77; *Slack* v. *Lexington and M. R. R.* 9 B. Monroe, 526."

Some stress is laid upon the peculiar terms of the act of 1860. "If the election shall authorize the issuance of said bonds, the Board of Supervisors, in that event, are empowered to issue the bonds." It is ingeniously urged that this language shows that the authority for the issuance of the bonds comes from this election, and not from the law, and that, therefore, the voters are really the law makers. This argument is more specious than sound. If effect were given to it, it would prove that no condition dependent upon the act or will of a third person, could be made in a law, since the person so acting would be, in effect, the law maker. But we have

seen that the provisions of the law were complete by the act of the Legislature ; that by those provisions the condition to the operation and effect of the law were made, and that the Legislature had as much power to annex the condition as the substantive provision to which the condition attaches; that there is no difference in principle between affixing a condition of popular approval of the acts authorized, and any other condition ; and no difference between ascertaining that approval by popular vote at an election held under the usual forms, and an expression by writing or otherwise. Indeed, it seems strange that it ever should be doubted that the Legislature, not trammeled in this respect by constitutional rules, should have the acknowledged power to direct the issuance of these bonds absolutely, and should be denied the power to direct their issuance in the event that those who are alone interested approved of their act ; that this general power did not include the right to qualify it by the expressed assent of those affected by its exercise.

If the effect of this act had been made dependent upon the acceptance or approval of the Board of Supervisors, no doubt would exist of the validity of the act and of the condition. How is it less effectual from the fact that the act is only operative by the consent of a larger number, to wit: the body of the people of the county, who may be considered, for all municipal purposes, corporators of the county ?

The substance of the act is this grant of power to authorize the issuance of these bonds, upon condition of the assent of the voters, and the precise words used by the Legislature are not important, the sense and design being obvious from a just construction of the whole act.

It is not easy to draw the exact line of discrimination between the principle of the cases in New York, which deny the constitutionality of acts of the Legislature, like the school law, and of those cases which affirm the constitutionality of acts like those in the case of the city of Rochester. Eminent Judges have doubted the soundness of the distinction, and denied the conclusion reached in the first class of cases. It is, perhaps, enough to say that the distinction is recognized ; and, in our judgment, the rule announced

in *Clarke* v. *Rochester*, and kindred cases, results necessarily from the premises already given. Every attribute of a law is impressed upon the Act of 1860. The legislative will is complete in itself and in its expression. It is by force of the law that the bonds are authorized and issued. It is true that the issuance depends upon the will of the electors ; but this condition is affixed by law, and is as much an emanation of the sovereign authority as is the grant of power ; and we have shown that, in the absence of constitutional restraints, the Legislature, having the right to exercise an unqualified power, may, if it chooses, add a qualification to the power, the qualification being, in this instance, the contingency in which the acts prescribed by the law are to be done. This is not to transfer to the people of the county the power to pass laws ; for the Legislature pass the law, and by the law declare that given acts shall be done in a given event, viz : in this case upon the assent of those affected by them—an event which they had as much right to prescribe as any other event—for to hold that this is a transfer of legislative power would deny effect to every legislative grant, since this depends on the acceptance of the grantee. We have already seen that the number of those who are to assent in order to render the grant valid, or to give it operation, makes no difference in the principle. So it results that the people of the county do not under this act enact a law or exert legislative functions, but merely avail themselves of certain provisions of law passed by the constitutional authority. Their action, whatever it was, is under the law and in pursuance of its provisions.

2. It is urged that publication was not made for twenty days after the amendatory act was passed. But this was not required. The substantial matter was provided for in the original act, and the details provided for in the amendatory act did not affect the substantial features of the original act ; nor was it contemplated that there should be twenty days' publication of the provisions of the amendatory act.

3. There is no force in the point that polls were not opened in every precinct. The act did not require that this should be done, but the election seems governed by the same rules which prevail at elections for public officers.

4. Nor is it a valid objection to this proceeding that the amendatory act changes in substance the proposition as presented by the original act. Whether politic or expedient or not, we can see nothing in this objection which touches the power of the Legislature, or the authority of the public agents under it.

Judgment reversed and cause remanded.