Robinson v. Bidwell.

---

## ROBINSON v. BIDWELL et al.

<table>
<tr><td>22</td><td>379</td></tr>
<tr><td>81</td><td>494</td></tr>
<tr><td>81</td><td>496</td></tr>
<tr><td>22</td><td>379</td></tr>
<tr><td>111</td><td>65</td></tr>
<tr><td>22</td><td>379</td></tr>
<tr><td>114</td><td>121</td></tr>
</table>

THE Act of April 25th, 1863, providing for a subscription by the City and County of Sacramento to the capital stock of the Central Pacific Railroad Company, upon a vote by the electors of the county in favor of the proposition, is in its main features constitutional, and authorizes the making of the subscription and issuance of bonds as therein directed.

The tenth section, exempting the city and county from liability for the debts of the company, if it be unconstitutional (a point not decided) is not so essentially connected with the scope and object of the act as to invalidate its other provisions.

Where a provision of a statute is of such a nature and has such a connection with the other parts as to be essential to the law, its unconstitutionality vitiates the whole enactment. But if an independent provision, not in its nature and connections essential to the law, be unconstitutional, it may be treated as a nullity, leaving the rest of the enactment to stand as valid.

Even where an invalid provision in a statute is in the nature of a condition to the main purpose of the law, its invalidity will not necessarily invalidate the whole law if the remaining provisions are sufficient to effect that main purpose.

Where a law is passed providing that certain acts shall be done upon the contingency of a vote of the electors of a district, the vote upon such proposition is not an act of legislation, but simply an event, upon the happening of which the law is to take effect.

In determining the constitutionality of an act which was to take effect, upon a vote of the people in its favor, it is not material to inquire whether an unconstitutional provision therein was so important, in the view of the voters, that, if its invalidity had been known to them, they would not have sanctioned the law.

The proposed Central Pacific Railroad, leading from the City and County of Sacramento to the eastern portion of the State, is so far a public improvement, and sufficiently for the apparent interest of the city and county, that a law authorizing the municipality to become a stockholder in the railroad corporation is not unconstitutional as imposing a tax upon a local community for an improvement in which it has no peculiar interest.

Per CROCKER, J.—Persons dealing with a corporation have the right to waive, by special contract or in any other proper mode, all claim upon the personal liability of the stockholders, or to limit or qualify the extent of that claim. The fact that such claim is founded upon a constitutional provision, can make no difference.

A party may waive a constitutional as well as a statutory provision made for his benefit.

How far the Legislature may, under the thirty-second and thirty-sixth sections of Art. 4 of the Constitution, regulate the individual liability of stockholders in a corporation, discussed and held open for future decisions.

APPEAL from the Sixth Judicial District.

April 25th, 1863, the Legislature passed an act, entitled "An Act to authorize the City and County of Sacramento to subscribe to the Capital Stock of the Central Pacific Railroad Company of California, and providing for the payment of the same, and other matters relating thereto." The first section provides for a special election, at which shall be submitted to the voters of the county a proposition for the county to take three hundred shares of stock. Sec. 2 prescribes the form of the ballot, and declares that if a majority vote for the proposition, the Board of Supervisors of the county shall subscribe and pay for the stock as thereinafter directed. Sec. 3 directs the mode of subscribing. Sec. 4 provides for the preparation of county bonds, and Sec. 5 for their issuance in installments. Secs. 6–9 provide for the levy of a county

tax, and creation of a fund to meet the interest and redeem the bonds. The tenth section is given in the opinion of the Court; and the eleventh and last section makes the act a public act, and in force from its passage.

The election was held as provided by the act, resulting in a majority for the proposition.

The plaintiff alleges in his complaint, that he is a resident and tax payer of Sacramento County; that the defendants compose the Board of Supervisors of the county, and are about to subscribe for the stock and issue the bonds as provided in the act; that the Railroad Company is already largely indebted, and for this and future indebtedness the county will become liable; that the act is unconstitutional and therefore void, and prays that defendants be perpetually enjoined from making the subscription or issuing the bonds.

An order was made that defendants show cause why an injunction should not issue, and in connection with this a temporary restraining order. The motion was heard on the complaint, the answer filed by the defendants and affidavits, and an order made refusing the injunction and dissolving the restraining order. The appeal is taken by plaintiff from this order.

*Tod Robinson & J. G. Hyer*, for Appellant.

I. The tenth section of the act in question is unconstitutional, being in direct conflict with the thirty-sixth section of the fourth article of the Constitution which reads as follows: "Each stockholder of a corporation or joint-stock association shall be individually and personally liable for his proportion of all its debts and liabilities."

It cannot be questioned that the City and County of Sacramento (when this subscription shall have been made) will be a stockholder of a corporation within the meaning of this section, and thereby become liable for its (his) proportion of all the debts and liabilities of said company.

It may be contended that its (his) proportion of said debts, etc., is not clearly declared in the Constitution, although we think differently, yet the point is immaterial, because said proportion is

clearly fixed by law. (See Sec. 32 of Act concerning Corpora-
tions, Wood's Dig. 119, and amendment thereto by Act dated
and approved April 27th, 1863.)

But independent of this view of the case, we think it clear
that said exemption clause is void, because while the Constitution
declares that each stockholder shall be liable for his proportion of
the debts and liabilities, this clause declares that this particular
stockholder shall not be so liable. The confliction is certain and
evident, and one or the other must be void. And the question for
determination is simply whether the Constitution or the statute is
the greater; whether a law passed by the Legislature which in its
essential particulars directly conflicts with the Constitution of the
State can be upheld by the Courts.

It is contended, that the proportion of the debts of the corpora-
tion, for which each stockholder is liable, is only the amount of his
subscription. In answer, we have only to say, that if the framers
of the Constitution had intended to provide that when his subscrip-
tion was paid up he should no longer be liable for corporate debts
or liabilities, they would have said so in so many words. The lan-
guage used in the Constitution is to be construed by the rules that
govern the interpretation of other instruments, or such as are used
in interpreting the ordinary sayings of men. There is not a set of
rules by which its provisions may be explained to mean that the
stockholder shall not be liable, when it says as plainly and posi-
tively as it is possible to express it in English language, that he
shall be liable. (See Debates in Constitutional Convention, 136.)

Again, the act makes special provisions in favor of a particular
corporation. Sec. 31 of Art. 4 of the Constitution provides, "Cor-
porations may be formed under general laws, but shall not be
created by special act, except for municipal purposes." By the
act here in question a special privilege and benefit is conferred
upon a particular corporation, and thus, by its terms, conflicts with
the above-quoted provision of the Constitution.

II. By the vote, the people only expressed their willingness to
the making of the subscription under the provisions of the act, and
under the limitations therein contained.

The unconstitutionality of the tenth section, therefore, destroys the

Robinson *v.* Bidwell.

force and virtue of the entire act. In the case of *The People* v. *Hill,* (7 Cal. 103) it is held, that the unconstitutionality of certain sections of a law will not vitiate the whole act, unless they enter so entirely into the scope and design of the law that it would be impossible to maintain it, without such obnoxious provisions. We submit that the case at bar comes within the rule here established, and that the tenth section does enter so entirely into the scope and design of the law that it would be impossible to maintain it without this section. This section, containing the exemption, is a vital and essential portion of the contract made between the City and County of Sacramento and the Central Pacific Railroad Company. It constitutes the principal feature of the agreement; and believing in the force and effect of this exemption, the people of the city and county were induced to yield their consent. To declare the section void, and yet maintain the act, is to destroy the only guaranty the people possess, and still hold them to their contract, and is to change wholly and entirely the agreement to which they consented.

*Geo. R. Moore,* for Respondent.

I. The law is full and perfect without the tenth section, and to strike this part out the balance would stand without objection.

"A part of a statute may be in conflict with some constitutional provision, and therefore void, while the balance of the law would be valid and binding." (*People* v. *Hill,* 7 Cal. 103.)

This act is identical with the Yuba County law, which has been passed upon and held to be constitutional by this Court. (*Pattison* v. *Supervisors Yuba Co.,* 13 Cal. 180; see also *Hobart* v. *Supervisors Butte Co.,* 17 Id. 29; *Grant* v. *Courter,* 24 Barb. 232; *City of Aurora* v. *West,* 9 Ind. 74, and cases cited in 13 Cal. 188.)

II. The tenth section of the act is constitutional. Sec. 36 of Art. 4 of the Constitution provides, that "Each stockholder of a corporation, or joint stock company, shall be individually and personally liable for his proportion of all its debts and liabilities." Now what is "his proportion of its debts and liabilities." Will not his proportion of its debts bear the same relation to the whole debt as his stock does to the whole stock. The words *personally* and *indi-*

Robinson *v.* Bidwell.

*vidually liable* mean nothing more than that for his proportion of the debts, his individual and personal property, as contradistinguished from his corporate property, shall be liable—that is, after the corporate property has been exhausted.

If this is the proper interpretation of the Constitution, then there is no conflict between the thirty-sixth section of the Constitution and the tenth section of the act. Besides, the Legislature had the perfect right to impose this limitation, and to require that such restriction should be embraced in every contract made by the company ; and all persons dealing with the company, with a knowledge of the limitation clause, would be bound by it, and the stockholders would not be liable for contribution outside or beyond their subscriptions. This view is fully sustained by the case reported in 19 Eng. Law and Eq. 627.

III. It is contended by the plaintiff that if the tenth section is not valid and no limitation is imposed, then the people voted on the proposition under a misapprehension of their liability, and that consequently they are not bound by their vote. As every one is deemed to know the law, the people could not legally withdraw their assent to the proposition, if they would, on the ground of ignorance. They voted upon the question, not as controlled by the tenth section (if that should be held invalid), but as the whole law will stand when construed and settled by our Courts.

The vote of the people did not change the law in the least. It gave it no more force or vitality and made it no more binding than when it left the hands of the Legislature. A statute may take effect at once or at some future time, or upon the happening of some event. In this case the contingency was the consent of the people. The law existed before, but was not to be enforced until this event transpired—until the people consented to accept its benefits and advantages. (*Hobart* v. *Supervisors of Butte Co.*, 17 Cal. 29.)

NORTON, J. delivered the opinion of the Court—COPE, C. J. concurring, and CROCKER, J. concurring specially.

This action is brought to restrain the Board of Supervisors of the City and County of Sacramento from subscribing for three thousand shares of the capital stock of the Central Pacific Railroad

Company of California, and from issuing any bonds of said county in payment of any subscription for such stock.

The Act of the Legislature, by authority of which the Board of Supervisors propose to subscribe for the stock and issue the bonds, was passed April 25th, 1863, and is entitled "An Act to authorize the City and County of Sacramento to subscribe to the Capital Stock of the Central Pacific Railroad Company of California, and providing for the payment of the same, and other matters relating thereto." (Statutes of 1863, 447.) The tenth section of the act contains this provision: " The said subscription of stock shall be made upon and the same shall be subject to the express condition that the said City and County of Sacramento shall not be liable or bound for the debts or liabilities of said company beyond or exceeding the amount of stock thus subscribed or held by said city and county; and all contracts made by said company for the construction or equipment of said railroad after such subscription shall have been made, shall be subject to said condition, whether expressed therein or not; and in case the said company shall fail or refuse to make such stipulation in all their said contracts, then the said Board of Supervisors shall have power to declare the said subscription void and of no effect, and may recover from said company any previous payments that may have been made thereon at the time of such failure or refusal."

It is insisted by the plaintiff that this provision of Sec. 10, exempting the City and County of Sacramento from liability for the debts and liabilities of the company beyond the amount of the stock subscribed, is void, because repugnant to Sec. 36 of Art. 4 of the Constitution, which provides that " each stockholder of a corporation or joint stock association shall be individually and personally liable for his proportion of all its debts and liabilities ;" and that this provision being void it must result that the whole act is void. This result is claimed to follow for two reasons: 1st, because although an Act of the Legislature may in some cases be valid in part, although another part may be void, yet this is not the case when the part that is void enters so entirely into the scope and design of the law that without it the law cannot be maintained, and such it is claimed is the relation which the provision in question

bears to the whole act; and 2d, because the voters of Sacramento have only given their assent to the subscription for the stock upon the condition contained in Sec. 10, and that if that is inoperative their assent becomes inoperative.

It is not necessary to decide what will be the effect of this provision of Sec. 10, in case the City and County of Sacramento should ever be called upon as a stockholder to pay any debt or liability of the railroad company, because if it should be conceded that this provision would be ineffectual to protect the city and county from liability, this fact cannot have the effect to invalidate the other provisions of the act.

In the case of the *People* v. *Hill* (7 Cal. 103), the Court say: " that if some of the provisions of the bill are unconstitutional this will not vitiate the whole act unless they enter so entirely into the scope and design of the law that it would be impossible to maintain it without such obnoxious provisions." This remark is in consonance with numerous decisions made in other States. (*Town of Fishkill* v. *Fishkill & Beekman P. R. Co.*, 22 Barb. 634; *Campbell* v. *Union Bank*, 6 How. Miss. 625; *Clark* v. *Ellis*, 2 Blackf. 8; *Baltimore* v. *State*, 15 Md. 376; *Santo* v. *State*, 2 Clarke, Iowa, 262; *McCulloch* v. *State*, 11 Ind. 424.) But if the void provisions are so connected with the others, that without them the substantial object of the act cannot be accomplished, then the whole act is void. (*Warren* v. *The Mayor and Aldermen of Charlestown*, 2 Gray, 84; *State* v. *Com. of Perry County*, 5 Ohio N. S. 497.)

It is obvious that there can be no rule applicable to all cases by which it can be determined whether any particular provision is essential to effect the scope and design of the whole law. In the present case it is insisted that the provision exempting the city and county from liability for the debts of the company is so important an element in the law, that if it had been understood that it could not have effect, the voters of the county would not have sanctioned the law. Whether they would or not is, however, purely a matter of conjecture; and besides, it is immaterial, because their vote was not the act of legislation. It is precisely because this vote is not tself the enactment of the law which relieves the act from the

objection that the Legislature cannot delegate its powers directly to the voters. (*Hobart* v. *The Supervisors of Butte County*, 17 Cal. 23.) The result of this vote is only the contingency upon which the Legislature have expressed their will that the law shall take effect. The event has occurred, and the law, so far as it was dependent upon this event, takes effect, because the Legislature has enacted that it should take effect on the happening of that event. The result of the vote is a fact, the effect of which cannot be varied by any speculations as to what it might have been.

But the exact question upon which the objection weighs is, whether the provision of Sec. 10 is so vitally connected with the other provisions of the act that the Court is authorized to say that the Legislature would not have enacted the law if they had understood that this provision could not have effect. We have had frequent occasion to cite the principle that Courts are not authorized to annul an Act of the Legislature unless its violation of the Constitution is clear and beyond a doubt. This principle is applicable to this case. Unless the Court can see clearly that this section is so connected with the scope and purpose of the act that without it the Legislature would not have passed the law, we are not authorized to declare the whole act void. The scope and object of the law as expressed in the title, and as appears from the body of the act, are to authorize the City and County of Sacramento to subscribe for stock of the railroad company and to provide for the payment of the same. It is certain that this object can be accomplished, although the provision in question should form no part of the law. It is an independent provision declaring what shall be the effect of the subscription as to the liability of the subscriber. Indeed, the subscription may be made upon the condition specified, and as between the subscriber and the company, and also as between the subscriber and any creditor in whose contract this condition is embodied, it would, we think, be operative. The only portion which can be claimed to be clearly void is that which provides that contracts not containing the condition shall nevertheless be subject to it. If the company shall make any such contracts the Board of Supervisors are empowered to declare the subscription void, and to recover any payments that may have been made. The Legislature

seem to have contemplated that this portion of the provision might not be operative to protect the subscriber, and have therefore afforded another remedy, to a certain extent, which would have been useless if there was no doubt of the efficacy of this portion of the provision.

Upon a consideration of all these circumstances, we do not consider ourselves authorized to say that the Legislature would not have enacted the law if they had supposed that this portion of Sec. 10 would be inoperative of itself to protect the subscriber from liability, and we must hold that the law in question is not obnoxious to any constitutional objection, except that portion of the tenth section which provides that contracts not containing the condition mentioned in that section shall be subject to it, and that the invalidity of that portion does not affect the validity of the residue of the act.

The judgment is therefore affirmed.

CROCKER, J.—I fully concur with my associates in the judgment rendered in this case and in all the points decided, with the exception of that portion of the opinion which seems to imply that that part of the tenth section which provides that contracts not containing the condition mentioned in that section shall nevertheless be subject to it, is obnoxious to the Constitution. That persons dealing with a corporation have the right to waive by special contract, or in any other proper mode, all claim upon the personal liability of the stockholders, or to limit or qualify the extent of that claim, I have no doubt. The fact that such claim is founded upon a constitutional provision can make no difference, for a party may waive a constitutional as well as a statutory provision made for his benefit. (Sedg. on Stat. and Con. Law, 111.)

Corporations under our laws have been spoken of as being little different from special or limited partnerships, or joint stock associations, at the common law (*Mokelumne Hill Canal Company* v. *Woodbury*, 14 Cal. 267; *Chater* v. *San Francisco S. R. Company*, 19 Id. 246), which, however, is only correct in a qualified sense. Still, treating them in that character, I think it clear that a creditor of a joint stock association or partnership would be bound by an agreement made by him waiving or limiting the personal res-

Robinson *v.* Bidwell.

ponsibility of the members. (Story on Partnership, Sec. 164; Collyer on Partnership, Secs. 1091, 386, 486.)   And where there is a stipulation or provision in the articles of partnership, or association, or by-laws, regulating, qualifying, or limiting the extent of such personal responsibility, it has been held that a creditor dealing with such association or partnership, with full notice thereof, is bound thereby, on the ground of having assented thereto (*Kerridge* v. *Hesse,* 9 Carr. & Payne, 200; Collyer on Partnership, Secs. 1091, 98, 387, 488; Story on Partnership, Sec. 129; *Dow* v. *Sayward,* 12 N. H. 275; *Ensign* v. *Ward,* 1 John. Cases, 171); and such notice may be inferred from circumstances, such as a publication in a newspaper taken by the creditor. (*Livingston* v. *Roosevelt,* 4 John. 251.)   Whether the same principle would apply to a regulation of liability by statute, of which all persons are presumed to take notice, it is unnecessary to decide.

The thirty-second section of Art. 4 of the Constitution provides that "Dues from corporations shall be secured by such individual liability of the corporators and other means, as may be prescribed by law."   This clearly leaves the regulation of the liability of the stockholders of a corporation entirely to the Legislature, imposing no restriction whatever upon the power, but leaving them free to regulate the character and extent of such liability, according to their own discretion, and under it there can be no pretense that the Legislature has exceeded its powers in any of the provisions of this tenth section.   The thirty-sixth section, however, provides that "Each stockholder of a corporation or joint stock association shall be individually and personally liable for his proportion of all its debts and liabilities."   This seems to take from the Legislature all power over the subject, and if it is to be considered as controlling and virtually repealing Sec. 32, it may be a question whether it does not invalidate many of the statutes which have been passed from time to time, regulating this question of personal liability. How these two sections are to be harmonized so that both may stand, or if they cannot be thus reconciled, which shall control the other, constitutes the great difficulty in the construction of the Constitution upon this subject.   Great public interests, as well as private rights of great value, are involved in its determination.   The

subject is one of too much importance to be disposed of without a thorough investigation and a careful consideration. It is not necessary to determine it in the present case, nor do I consider the opinion of Justice Norton as intending to decide that point, and it may therefore properly be considered open to future adjudication.

On petition for rehearing, NORTON, J. delivered the following opinion—the other Justices concurring:

A petition for a rehearing has been filed in this case by counsel, who, it is understood, also represent parties interested in the operation of other laws similar to the one considered in this case, of which several were enacted by the last Legislature. The importance of the question, as well as the fact that several other laws involving the same question may be presented for consideration, has induced us to deliberate carefully upon the arguments presented in the petition for rehearing, but we have found no reason for changing our former opinion or for ordering the case to be reargued. Indeed, upon the principal question no authorities have been cited nor any principles of law suggested other than those cases which were cited by us and those principles of law which were presented by us in our former opinion. The purpose of the petition has been to press upon us with great earnestness the authority and weight of those cases and those principles of law. Probably no other case can be found in which language so favorable for the plaintiff is employed, as that of the case cited from 2 Gray, 84, and none in which a decision favorable to the plaintiff was made in which the facts approach so near to this case as in the case cited from 5 Ohio, N. S., 497. The case in 2 Gray, however, does not furnish us any aid in searching for a criterion by which to determine when a void portion of a law is so connected with the other portions as to render the whole void, because in that case the vice was not in any particular provision, but in the purpose and effect of the whole law. The Court say: " Before proceeding to consider the objections separately, we are all of opinion that if this act be unconstitutional at all, it is not in any separate and independent enactments, but in the entire scope and purpose of the act." Hence, what the Court says as to parts being conditions, considerations, or compen-

Robinson *v.* Bidwell.

sations for each other, had no application to the case before the Court, and receives no illustration from the facts of the case. In the case from 5 Ohio, the Court do not consider what effect the void provision would have had upon the residue of the law if it had rested solely upon the action of the Legislature, because by the Constitution of that State the question of the removal of a county seat, which was the case before the Court, is required to be left to the choice of the electors. By the law under consideration in that case the electors were not left free to vote upon the question of removal, but a provision was added calculated to compel them, by pecuniary considerations, to vote differently from what they otherwise might. The whole law, therefore, by which the question was submitted to the electors was held to be void. In the case before us, although the people were called upon to vote upon the question of subscribing for the stock, it was not by virtue of any constitutional requirement that the question must be submitted to them. It was not necessary to the validity of the law that it should have been submitted to a vote of the people, as it was in the Ohio case. In the Ohio case, the people, by the Constitution of that State, were authorized to say by their vote whether the county seat should be removed. In our case, the people are not authorized by a direct vote to determine whether the county shall have the right to subscribe for stock. The Legislature have seen fit to say that the law shall take effect or not, according to the result of a vote, simply considered as an event. As was shown in our former opinion, by reference to the case of *Hobart* v. *The Supervisors of Butte County* (17 Cal. 23), if the law was to take effect in consequence of the vote, considered as an expression of the will of the voters as to whether it was a proper law, the submission of the question to their vote would have been void, as amounting to an enactment of a law by the direct vote of the people, which cannot be done under our Constitution. In the State of Rhode Island and in the State of Iowa, and, we think, in other States, it has been decided that a provision in the statute submitting it to the people to say by their vote whether the law shall take effect is absolutely void, as being an attempt to delegate to the people directly the power of enacting laws which can only constitutionally be exercised by the Legislature.

These decisions will perhaps commend themselves to many minds as resting upon clearer grounds of reason than those decisions which allow a law to take effect or not according to the result of such a vote, considered merely as an event, but at the same time deny that any legislative effect can constitutionally be given to such a vote. Yet in those States, while the provision of the statute submitting the law to a vote of the people was held to be wholly void, the statutes themselves were held to be valid laws, notwithstanding this invalid provision. (*State* v. *Copeland*, 3 R. I., 33 ; *Santo* v. *State*, 2 Clarke, Iowa, 262.) In this State as in the States of Rhode Island and Iowa, the validity of a law containing a provision submitting it to a vote of the people cannot be determined by inquiring into any supposed inducements that may have influenced the vote of the people, but must be determined by a consideration of the connection and relative operation of the valid and invalid provisions. But if the vote of the people could be considered as the act of legislation, the result would be the same. We must in that case apply the same considerations to determine the validity of a law passed by a direct vote of the people that are applicable to determine the validity of a law passed by the Legislature.

By what criterion can the Court decide that any particular provision is so essential that if it be invalid the whole law must be held invalid ? In the case from 2 Gray the Court say, " if the invalid provision is so connected with the others as to warrant a belief that the Legislature intended them as a whole, and that if it could not be carried into effect the Legislature would not pass the residue independently," the whole is void. This criterion we applied in our former opinion, and concluded that tried by this test the law in question was valid in all its parts, except the obnoxious provision of the tenth section. But we have seen above that this criterion finds no illustration in the facts of the case in which it was announced, and upon scrutiny it will be found, we think, that this general language really furnishes no practical criterion. In one sense the Legislature must always intend all the provisions of an act " as a whole." The various sections and provisions are always enacted together as one law, when these sections and provisions relate to

Robinson *v.* Bibwell.

the same subject.   And by what process can a Court determine whether the Legislature would or would not have passed one portion if another portion could not have effect ?   If we were allowed to say that the legal presumption in all cases is that the Legislature would not have passed the law at all unless all its parts could have effect, we would have a simple criterion and a comparatively easy task.   But, on the contrary, it is fully settled that although a part ·is void, the residue may be sustained.

The rule has a nearer approach to a practical criterion as it is given in the case of the *Exchange Bank of Columbus* v. *Hines* (3 Ohio N. S. 1), in which the Court say : " Where the provision of a statute is of such a nature, and has such a connection with the other parts of the statute as to be essential to the law, its unconstitutionality vitiates the whole enactment.   But if an independent provision, not in its nature and connection essential to the other parts of the statute, be unconstitutional, it may be treated as a nullity, leaving the rest of the enactment to stand as valid."   In the case of *Clark* v. *Ellis* (2 Blackf. 8) the rule is given in these words : " A part of an Act of Assembly unconstitutional does not affect a constitutional part of the same act relating to the same subject.   That part which is unconstitutional is considered as if stricken out of the act, and if enough remains to be intelligibly acted upon, it is considered as the law of the land."   Tried by the test furnished in those cases there is no difficulty in deciding that the law under consideration is not wholly void.   The provisions of Sec. 10 cannot be said with any reason to be essential to the main purpose and object of the law, and if that section were stricken out the remaining sections would constitute a complete law.   The purpose of that section is only to add a certain incident and effect to the act of becoming a stockholder, but it is not of the essence of becoming a stockholder.   This incident may fail, and yet the substance of the transaction remain.   In all cases where a question of this kind arises, the provision which is found to be invalid has a connection with and qualifies or affects the other provisions.   The Legislature does not insert provisions which are merely nugatory. Yet that it has such a bearing upon and qualification of the other provisions is not alone sufficient to constitute it so essential to the

26

law that, if it cannot take effect, the whole must fail.   Even where
the invalid provision is in the nature of a condition to the main pur-
pose of the law, its invalidity will not necessarily invalidate the
whole law, if the remaining provisions are sufficient to effect that
main purpose.   Thus in the case of the *Mobile and Ohio Railroad
Company* v. *The State* (29 Ala. 573), a law is presented provid-
ing for a loan of money by the State to certain corporations.   In
order to obtain a loan the corporations are required to consent that,
if they made default in payment, their charters should be forfeited,
and that the General Assembly might declare them forfeited, and
that any forfeiture so declared should be complete and effectual for
all purposes, without any judicial proceedings for such purpose.
The portion of this conditional provision which required a consent
that the General Assembly might declare the charters forfeited
without legal proceedings, was held to be invalid as attempting to
confer judicial powers upon the Legislature.   Nevertheless, the
residue of the law was sustained, yet all the objections might have
been urged in that case that are in this.   It might plausibly be
said that the Legislature of Alabama never would have passed the
law to loan the money of the State if they had supposed that effect
could not be given to the provisions for a prompt and effectual
coercion of payment.

We dispose of this case upon the assumption that a portion of
Sec. 10 is invalid, as claimed by the plaintiff, but do not decide
that it is invalid, deeming it proper to leave that question to be
definitely decided when, if ever, it shall be necessary to the decision
of a case.

It is also suggested, in the petition for rehearing, that the Legis-
lature cannot constitutionally impose a tax upon a local community,
city or county (which will be the effect of this law), in order to aid
a work of internal improvement beneficial to the State at large, but
not peculiar to or belonging to the particular locality, or specially
intended to promote its local interests.   This question has been
much discussed in other States.   In the case of *Sharpless* v.
*Mayor of Philadelphia* (21 Penn. 181) the Court conclude that
if the road is merely a private affair, or if the city can have no
interest in its construction, a law authorizing the city to become a

stockholder would be void.  But that a railroad, as in that case, leading from the interior of the State to the City of Philadelphia was not a private affair, but a public improvement, and that the Court could not say that the city had no interest in its construction. These considerations apply to the case before us.  The road is a public improvement, forming a portion of a great line of communication between remote parts of the State, and indeed of the nation, and connecting with the City and County of Sacramento.  We cannot undertake to say that the City and County of Sacramento are not interested in its construction.

Rehearing denied.