[No. 4,462.]

THE PEOPLE, EX REL. JOHN L. LOVE, ATTORNEY-GENERAL, *v*. JAMES NALLY.

SUBMITTING A LAW TO A POPULAR VOTE.—An act which submits to a popular vote of the electors of a county, the question, whether a portion of the territory of an adjoining county shall be annexed to it, and provides, that if a majority of the votes are for annexation, that the organization of the adjoining county shall be abandoned, and its territory shall be divided and annexed, in part to the county in which the vote was taken, and in part to another adjoining county, is not unconstitutional.

APPLICATION to the Supreme Court for a writ of mandate.

The Act of March 28, 1874, provided that the Board of Supervisors of Siskiyou county must meet in Yreka, the county seat, on the second Monday in May, 1874, and order an election to be held in Siskiyou county, on the 30th day of May, 1874, at which the qualified electors of the county might vote on the question of the annexation, to Siskiyou county, of a portion of Klamath county described in the Act. That if a majority of the votes voted for annexation, the said Board of Supervisors must, within five days after canvassing the returns, make out two statements of the result, one of which they must forward to the Board of Supervisors of Klamath county, and the other to the Board of Supervisors of Humboldt county, and that, thirty days thereafter, the organization and government of Klamath county must be abandoned, and a part of its territory annexed to Siskiyou county, and the remainder to Humboldt county. Klamath was organized as a county by an Act of the Legislature approved April 25, 1851. During the year 1873, James Nally was elected Assessor of Klamath county. Prior to June 30, 1874, Nally had assessed the property of Klamath county. The Board of Supervisors of Siskiyou county

ordered the election, and a majority of the votes were cast in favor of annexation. The Board then forwarded the statements to Klamath and Humboldt, as required by the Act. Nally, the Assessor, refused to prepare an assessment book, as required by section 3,650 of the Political Code, claiming that, by the election, Klamath was no longer a county. This was an application for a writ of mandate to compel him to prepare such book. The case was submitted upon an agreed statement of facts.

*John L. Love,* Attorney-General, and *McKune & Welty,* for the Petitioner, cited the following authorities in support of the point that the Act was unconstitutional: *Rice* v. *Foster,* 4 Harringtion, 479; *Thorne* v. *Cramer,* 15 Barb. 112; *Bradley* v. *Baxter,* 15 Barb. 122; *Barto* v. *Himrod,* 4 Selden, 483, *State* v. ———, 17 Texas, 441; *People* v. *Collins,* 3 Mich. 343.

*Henry Edgerton,* for the Defendant, cited the following authorities on the point that the Act was constitutional: *Hobart* v. *Sup. Butte County,* 17 Cal. 29; *Robinson* v. *Bidwell,* 22 Cal. 379; *People* v. *Hill,* 7 Cal. 103.

*C. T. Botts,* also for the Defendant.

By CROCKETT, J.,—RHODES, J., concurring:

The first section of the Act of March 28, 1874, (Statutes 1873–4, p. 755), directed a vote to be taken of the qualified electors of Siskiyou county, whether a certain portion of Klamath county should be annexed to Siskiyou. If a majority of votes should be in the affirmative, the Act provides that Klamath county shall be abolished, and a portion of its territory shall be annexed to Siskiyou, and the remainder to Humboldt county. It is claimed on behalf of the relator, that this was a delegation of legislative power to the people of Siskiyou, and that for this reason the Act is unconstitutional and void.

Whilst it is undoubtedly true that there is a considerable conflict in the authorities on the questions whether an Act

of the Legislature, which is to take effect or not, as it may
be determined by the popular vote, is a delegation of the
law making power, I think the weight of authority in this
State and elsewhere, fully supports the negative of the
proposition, and especially in respect to local statutes.

In this case, the only proposition submitted to a popular
vote was whether a portion of Klamath should be annexed
to Siskiyou county, and if the vote was in the affirmative,
then the county of Klamath was to be abolished and its
territory annexed to Siskiyou and Humboldt counties, in
the manner provided in the Act. The case, therefore, pre-
sents the naked question whether an Act annexing a portion
of one county to another, and which is to take effect only
in the event that a popular vote of one of the counties is in
favor of the annexation, is a delegation of legislative power.
It is to be observed that the Act related to a matter of
purely local concern, in which the people of the district to be
affected by it, were alone interested. In this respect it differs
materially from the Local Option Liquor Law, so called,
which was involved in *Ex parte Wall,* 48 Cal. 278. In that
case the question was whether a statute authorizing a general
law to be suspended in certain political subdivisions of the
State, by a vote of the people of the district, was a delega-
tion of legislative power. However the rule may be in that
class of cases, it is settled, I think, by an overwhelming
weight of authority in this and many other States, that in
matters of purely local concern, it is competent for the
Legislature to enact that a statute affecting only a particu-
lar locality shall take effect on condition that it is approved
by a vote of a majority of the people whom the Legislature
shall decide are those who are interested in the question.
In *Upham* v. *The Supervisors of Sutter County,* 8 Cal. 379,
the question was, whether an Act authorizing the location
of a county seat, to be determined by a popular vote, was
unconstitutional on the ground that it was a delegation of
legislative power; and the Act was held not to be obnox-
ious to this objection. In *Hobart* v. *The Supervisors of
Butte County,* 17 Cal. 23, the same objection was urged
against an Act which authorized the Supervisors to issue

bonds of the county in exchange for certain railroad bonds, in the event that the issuing of the bonds was first approved by a popular vote. Justice BALDWIN, in delivering the opinion of the Court, after carefully collating and examining the authorities, comments upon the distinction between local and general laws in this particular; and holds that, however the rule may be in respect to the latter, there can be no doubt that a purely local statute may be made to take effect on condition that it is approved by a vote of those to be affected by it. Similar views were expressed by Mr. Justice FIELD, speaking for the Court, in *Blanding* v. *Burr*, 13 Cal. 343. In *Robinson* v. *Bidwell*, 22 Cal. 379, a statute authorizing county bonds to be issued, if approved by a popular vote of the electors of the county, was held to be only a law to take effect on the happening of a future event, and not a delegation of legislative power. So far as I am aware, the legal proposition decided in these cases, has never been denied or questioned by any adjudication of this Court, unless it be in *Ex parte Wall*, before adverted to. But, as already stated, the statute considered in that case, authorized a general law to be suspended in a particular district, on a vote of the electors of the district; whereas in the present case, a local statute is made to take effect on the happening of a future event, to-wit: a vote by the people who were deemed to be affected by it. As we have seen, statutes of this character have been uniformly sustained by this Court, and I may add, by numerous decisions of other Courts of high authority.

The legal proposition involved in the case is not affected by the fact that the electors of Siskiyou county only were required to vote on the question of annexation. The Legislature decided that there were sufficient reasons for abolishing Klamath county, and annexing a portion of its territory to Humboldt, and it may be that all or a majority of the voters of these counties petitioned the Legislature to that effect. But, entertaining a doubt whether the annexation of a large portion of the territory to Siskiyou county, accompanied with a condition that it should assume a corresponding proportion of the debt of Klamath, would not

impose a hardship on the people of Siskiyou the question of annexation was submitted to the electors of that county only, whose interests, in the opinion of the Legislature, might be injuriously affected by the proposed change.

I am, therefore, of opinion that the application for a peremptory writ of mandate ought to be denied, and it is so ordered.

WALLACE, C. J., concurring specially:

I concur in the judgment.

MCKINSTRY, J., concurring specially:

I concur in the judgment. By an Act repealing all laws relating to its organization, the Legislature might have disincorporated the county of Klamath, and then, by subsequent statute, might have annexed its territory to the counties of Siskiyou and Humboldt. The portions of the Act under consideration, which provide, on condition of a certain vote by the electors of Siskiyou, that "organization and government of the county of Klamath shall be abandoned," are not inseparably connected with, nor do they necessarily depend upon the other portions of the same Act. It is well settled that, if a provision which is not obnoxious to objection, is found even in the same section with another which is repugnant to the Constitution, the one in itself valid and complete must be sustained, unless the two are so united as that it must be presumed that the Legislature would not have adopted the one without the other. The distribution into sections is purely artificial, and the real point is whether the provisions are essentially and inseparably connected in substance. (*Robinson* v. *Bidwell*, 22 Cal. 379; *Com.* v. *Hitchings*, 5 Gray, 485.)

Doubtless the moral obligation rested upon the members of the Legislature to furnish local government to the inhabitants of the county of Klamath, and when that county was disincorporated, to provide for the payment of its debts, etc. They may or may not have discharged this duty by the statute under consideration. On that point I express no opinion. But assuming that they have failed to

do so, by reason of a condition therein inserted which renders those portions of the statute which relate to such matters void, I cannot say (had the constitutional objection been suggested) that they would not have passed the portions of the Act relating to the disorganization of Klamath county, reserving for further and appropriate legislation the division of its territory and other matters connected with the establishment of new local governments within its borders.

It is not necessary, therefore, to inquire whether those parts of the law can be upheld which relate to the annexation of the territory of the former county to the adjacent counties. The proceeding before us is against one claiming to be an officer of Klamath county, and does not involve the validity of those portions of the statute which refer to the disposition of the territory, etc., of Klamath after its disorganization.

It was undoubtedly within the power of the Legislature to disincorporate the county without making any provision in the same Act for the future local government of the territory. The only question here is whether the condition that the law shall take effect only in case of a vote by the citizens of Siskiyou, such as is mentioned therein, renders invalid that part of the law which provides for the disincorporation.

The statute of March 8, 1874, did not submit to the voters of Siskiyou county the question, "Is the disorganization of Klamath county desirable or expedient?" The question was in effect, "Do you desire that a part of Klamath shall be attached to your county?" In *ex parte Wall* this Court held that a law could be made to take effect upon a condition provided it did not appear that the members of the Legislature had attempted to delegate to others their own exclusive function of determining the propriety and expediency of the law. This law, so far as it abolishes Klamath county, was a perfect law when it left the hands of the Legislature. It was to take effect on the happening of an event, which was not to be the exercise by any other person of the discretion and judgment which the Legislature were bound to exercise for themselves with respect to the subject of the

law, to wit: the disorganization of Klamath. The Legislature declared that Klamath should be abolished if the people of Siskiyou should express a willingness to take part of its territory; but this is a very different thing from declaring that Klamath should be abolished, provided the people of Siskiyou should declare that Klamath should be abolished. The Legislature had power to say: "Klamath county shall be abolished on the happening of an event which may serve to enlighten us with reference to a future legislative disposition of the territory, property and existing obligations of the county." True, if Siskiyou shall not vote in favor of receiving part of the territory, etc., Klamath will not be disorganized. This, however, is because the Legislature has decided that in such event it ought not to be disorganized—not because the people of Siskiyou are clothed with the power to decide upon the expediency of the continuance or non-continuance of the county government of Klamath. In this respect it does not differ from many other laws by the terms of which the Legislatures declare that if a named event shall occur, certain legislation is wise and expedient, but in which the Legislature do not seek to transfer to others the power of deciding whether the legislation is wise or expedient in the present, or will become wise or expedient in case of a future contingency.

It is not the circumstance that a vote is made the condition which vitiates a statute; it is the transfer or attempted transfer to others of the responsibility of deciding the policy, wisdom and justice of a statute. If this power and responsibility can be delegated to a large number, it can be delegated—as was admitted by counsel—to one person; and a law affecting only the people of Shasta, or affecting all the people of the State could be made to take effect at the will of a single individual in Napa county. The "Local Option" statute attempted to transfer to the majority in a township (constituting no local government under the Constitution) the power to repeal or keep in force—as to that township—a general statute, previously in force throughout the State. It was an effort to delegate the power of determining the wisdom and expediency of the statute, and of

substituting, at the option of a local majority, another statute in its place. Nothing like this is attempted by that part of the statute of March 28, 1874, now before us.

Treating the portions of the law in respect to the disorganization of Klamath as a separate enactment, I cannot say that there is here an attempt to transfer or delegate the power of determining the wisdom, propriety or expediency of the law.

Mr. Justice NILES did not express an opinion.